769 P.2d 84

**GREEN TREE ACCEPTANCE, INC., Plaintiff–Appellant and Cross–Appellee,**

v.

**Albert LAYTON and Lucille Layton, his wife, Defendants–Appellees and Cross–Appellants.**

**No. 17800.**

Supreme Court of New Mexico.

Feb. 21, 1989.

for replevin against defendants-appellees, Albert and Lucille Layton (Laytons), seeking possession of a mobile home owned by the Laytons and over $40,000 alleged to be due under the default provisions of a retail installment sales contract which the Laytons had executed when purchasing the mobile home and which had been assigned by the seller to Green Tree. The Laytons denied the allegations of the complaint and counterclaimed, alleging that Green Tree converted to its own use certain insurance proceeds belonging to the Laytons, and seeking punitive damages in the amount of $25,000. After a two-day trial, the jury found against Green Tree and in favor of the Laytons, awarding $33.75 compensatory and $10,000 punitive damages. The jury reached its verdict after answering no to an interrogatory asking the following question: "Do you find that the defendant [1] was in default and failed to cure his default within 30 days of written notice?" In its judgment, the trial court adopted the finding of the jury on the submitted interrogatory and found "that the defendant was not in default under the terms of the retail installment agreement."

Green Tree's motion for judgment n.o.v. or remittitur was denied. The court awarded the Laytons attorney's fees for their attorney's services in securing a pre-trial dissolution of the writ of replevin, but denied the Laytons' motion for additional attorney's fees for defending the complaint and prosecuting the counterclaim.

Daniel E. Duncan, Albuquerque, for plaintiff-appellant and cross-appellee.

Emmett C. Hart, Albuquerque, for defendants-appellees and cross-appellants.

## OPINION

SOSA, Chief Justice.

### PROCEDURAL SETTING

Plaintiff-appellant, Green Tree Acceptance, Inc. (Green Tree), filed its complaint

### FACTS

The Laytons executed the mobile home sales contract in 1983. They made payments totaling over $15,000 until the present controversy arose, and then paid an additional sum of more than $10,000 into the registry of court pending resolution of the lawsuit. Until the controversy began which led to the lawsuit, Green Tree had never asserted that the Laytons were in default. In June 1985, the mobile home and other property owned by the Laytons suffered damage from violent weather.

---

1. Mrs. Layton had died by time of trial.

The mobile home was damaged to the extent of over $500, and the Laytons' other property was damaged to the extent of over $1,800. Pursuant to the terms of the installment contract, the insurer mailed the draft for payment of the damages directly to Green Tree. Green Tree wrote to the Laytons as follows: "Please endorse this draft * * * and return it to our office as soon as possible * * *. Once we receive the draft back from you, we will release all money allowed for damage to property other than the mobile home."

The Laytons endorsed the draft and mailed it back to Green Tree. Green Tree then notified the Laytons that they were delinquent in their payments for September 1985, and stated that it was going to withhold payment of the Laytons' share of the insurance proceeds. The Laytons denied that they were delinquent—a position they continued to assert throughout trial. After several arguments over the telephone, the Laytons told Green Tree to deduct the September and October payments from the insurance proceeds and send them the balance. The Laytons acquiesced partly because they had several checks outstanding at their bank, and had pledged the insurance proceeds to the bank to cover the overdrafts. On November 18, 1985, Green Tree wrote a check to itself for some $1,600 as payment for the installments due for September, October and November, even though, as Green Tree later admitted, the Laytons' November payment was not then due. Payments for the mobile home were due on the twentieth day of each month.

Green Tree mailed a check to the Laytons in the amount of some $700 as the balance due from the insurance proceeds. The Laytons did not receive this check, and it was returned to Green Tree. On or about January 17, 1986, the Laytons contacted Green Tree and told it to deduct the current month's payment from the $700 balance, to return the rest, and to pay them interest for Green Tree's use of the insurance proceeds from the time Green Tree had received those proceeds in October 1985. Green Tree applied that portion of the $700 to the Laytons' account which was

necessary to bring their account current, leaving a balance of some $200 from the insurance proceeds. Green Tree, however, did not return the balance of the insurance proceeds and did not credit the Laytons' account with interest for Green Tree's use of the insurance proceeds.

On March 13, 1986, Green Tree notified the Laytons that, taking into consideration the balance remaining from the insurance proceeds which Green Tree held on their account, they were some $300 delinquent, and that payment of $300 would bring their account current as of March 20. On March 18, Laytons paid the $300. On April 14, 1986, Green Tree notified the Laytons that they were in default for the March payment and that they could cure default by making payment within thirty days. The Laytons made payment on May 5, 1986, but Green Tree refused to accept this payment, taking the position that it did not receive the May 5 payment until June 9. Green Tree's deposition witness corroborated Green Tree's position that it did not receive this payment until June 9. At trial, however, Green Tree's in-house correspondence revealed that the May 5 payment had actually been received by Green Tree on May 7. On June 16, 1986, the Laytons mailed another payment to Green Tree, but Green Tree refused this payment also, declaring the entire amount due under the contract and filing its Complaint for Replevin on July 8, 1986.

### ISSUES RAISED ON APPEAL

On appeal, Green Tree argues (1) that the trial court erred in submitting the issue of punitive damages to the jury, (2) that there was not substantial evidence to support the award of punitive damages, (3) that the award of punitive damages was excessive, reflecting the jury's passion and prejudice, (4) that the trial court erred in not granting Green Tree's motion for judgment n.o.v. or remittitur, and (5) that the court erred in awarding the Laytons fees for their attorney's services in dissolving the writ of replevin. On cross-appeal, the Laytons argue that the trial court erred in not awarding them fees for their attorney's

services in defending the complaint and prosecuting the counterclaim.

We affirm the judgment of the trial court in its entirety.

## DISCUSSION OF LEGAL ISSUES

### (A) *PUNITIVE DAMAGES*

■ The standard for awarding punitive damages in New Mexico is adequately set forth in SCRA 1986, 13–1827. Punitive damages may be awarded only when the wrongdoer's conduct may be said to be "maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard of the plaintiffs' rights." *Hood v. Fulkerson*, 102 N.M. 677, 699 P.2d 608 (1985) (quoting *Loucks v. Albuquerque Nat'l Bank*, 76 N.M. 735, 747, 418 P.2d 191, 199 (1966)). These words are to be taken as used in the disjunctive. *See Bank of New Mexico v. Rice*, 78 N.M. 170, 180, 429 P.2d 368, 378 (1967), *appeal after remand*, 79 N.M. 115, 440 P.2d 790 (1968); *see also Curtiss v. Aetna Life Ins. Co.*, 90 N.M. 105, 108, 560 P.2d 169, 172 (Ct.App.), *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976). Punitive damages are to be awarded when actual or nominal damages are inadequate to satisfy the wrong committed. *Montoya v. Moore*, 77 N.M. 326, 330–31, 422 P.2d 363, 366 (1967). Punitive damages do not have to be in reasonable proportion to the actual damages, but they must not be so unrelated to the injury as to plainly manifest passion and prejudice rather than reason and justice. *Faubion v. Tucker*, 58 N.M. 303, 307, 270 P.2d 713, 716 (1954). Factors to be weighed in assessing punitive damages are the enormity and nature of the wrong and any aggravating circumstances. *See Sweitzer v. Sanchez*, 80 N.M. 408, 412, 456 P.2d 882, 886 (Ct. App.1969). Finally,

> Where a party prays for an award of punitive damages and the evidence is sufficient to permit the issue of punitive damages to be considered by the jury, the amount of such damages is left to the sound discretion of the jury based on the nature of the wrong, the circumstances of each case, and any aggravating or mitigating circumstances as may be shown.

*Chavez–Rey v. Miller*, 99 N.M. 377, 379, 658 P.2d 452, 454 (Ct.App.1982), *cert. denied*, 99 N.M. 358, 658 P.2d 433 (1983).

■ In weighing Green Tree's conduct against the above criteria, we do not find that the trial court erred in submitting the issue of punitive damages to the jury. The record shows that the Laytons established a prima facie case of at least recklessness and bad faith, if not of willful, wanton and malicious wrongdoing. Green Tree's attempt to deny its receipt of the Laytons' May 5 payment within the thirty-day grace period was in itself sufficient basis for the trial court to submit the question of punitive damages to the jury. Green Tree presented evidence tending to show that it had acted only negligently in its dealings with the Laytons, and the trial court properly allowed the jury to weigh this evidence and draw its own conclusion. Further, the record supports the allegations in the Laytons' complaint that Green Tree converted the insurance proceeds to its own use. An action for conversion will sustain an award of punitive damages. *Id.; see also* 18 Am. Jur.2d *Conversion* § 114 (1985); *Haines v. Parra*, 193 Cal.App.3d 1553, 239 Cal.Rptr. 178 (1987) (decision whether to award punitive damages in a conversion action is for the jury to make).

■ We find substantial evidence in the record to support the jury's award of punitive damages, i.e., we find such relevant evidence to support the jury's award as a reasonable mind might accept as adequate. *See Clovis Nat'l Bank v. Harmon*, 102 N.M. 166, 168, 692 P.2d 1315, 1317 (1984) (citing *Toltec Int'l, Inc. v. Village of Ruidoso*, 95 N.M. 82, 84, 619 P.2d 186, 188 (1980)). We do not find in the record justification for Green Tree's charge that the jury was inflamed by passion or prejudice in making its award. The Laytons had asked for $25,000 in punitive damages, and the jury, after hearing all the evidence, awarded $10,000. It follows that the trial court did not err in denying Green Tree's motion for judgment n.o.v. or remittitur.

### (B) *ATTORNEY'S FEES*

■ The trial court based its award of attorney's fees to the Laytons' attorney, in securing dissolution of the writ of replevin, on NMSA 1978, Section 42–8–19, which allows attorney's fees "incurred in the dissolution of the writ and for double damages for the use of the property from the time of its delivery to the plaintiff." Green Tree argues that since there was never any delivery of the mobile home to Green Tree, this section is inapplicable. We disagree. It is clear from our reading of the statute that the legislature intended to compensate a defendant in replevin for defending an action that is groundless, whether or not the defendant's property has actually been seized by the sheriff. As we have said elsewhere, "[T]he history of Section 42–8–19 indicates that it was enacted to prevent a defendant from being forced to pay his own attorney fees to quash a writ issued based on a defective affidavit." *First Nat'l Bank v. Southwest Yacht & Marine,* 101 N.M. 431, 436, 684 P.2d 517, 522 (1984). We have never held, and do not hold now, that attorney's fees may only be awarded following the sheriff's execution of the writ of replevin.

■ As for the Laytons' cross-appeal, the trial court rejected their argument, based on NMSA 1978, Section 39–2–2 (Cum. Supp.1988), that the counterclaim was a civil action "involving liability for a deficiency pursuant to Section 55–9–504 * * *." Section 39–2–2 provides that, in such a situation, "the debtor, if prevailing, may in the discretion of the court be allowed a reasonable attorney fee set by the court and taxed and collected as costs." It is clear from reading the official comment pertaining to Section 55–9–504 that it pertains to a situation in which a secured party has taken possession of collateral, disposed of it, and then proceeded to an action against the debtor for a deficiency. Green Tree's action here was not of that nature. It was a replevin action taken for the purpose of *gaining* possession. Green Tree had done nothing by the time its action proceeded to trial to gain a deficiency judgment, because, since there had been no disposition of repossessed collateral, there was nothing on which such a deficiency could be based. Consequently, the trial court was correct not to award the Laytons attorney's fees on the strength of Section 39–2–2.

For the foregoing reasons, we affirm the judgment of the trial court in its entirety.

IT IS SO ORDERED.

SCARBOROUGH and BACA, JJ., concur.