1999-NMSC-013

976 P.2d 999

Cathy Jean COATES and Madeline
Duran, Plaintiffs–Appellees
and Cross–Appellants,

v.

WAL–MART STORES, INC., d/b/a Sam's
Club, Defendant–Appellant and
Cross–Appellee.

No. 24717.

Supreme Court of New Mexico.

Feb. 22, 1999.

Rehearing Denied March 18, 1999.

Sharp, Jarmie & Scholl, Mark D. Jarmie, Steve Scholl, Ned S. Fuller, Albuquerque, for Appellant and Cross–Appellee.

Tinkler & Bennett, Stephen E. Tinkler, Merit Bennett, Michelle Masiowski, Santa Fe, for Appellees and Cross–Appellants.

Jane Bloom Yohalem, Santa Fe, for Amici Curiae, New Mexico Women's Bar Association and New Mexico Coalition of Sexual Assault Prevention.

## OPINION

BACA, Justice.

{1} Wal–Mart Stores, Inc. (Wal–Mart) appeals the district court's judgment in favor

of former employees, Appellees Cathy Jean Coates (Coates) and Madeline Duran (Duran). On cross-appeal, Coates and Duran appeal the court's denial of prejudgment interest on punitive damage awards. On certification from the Court of Appeals, pursuant to NMSA 1978, § 34–5–14 (1972), this Court now considers the following issues: 1) whether the exclusivity provision in the New Mexico Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (1929, as amended through 1993), bars a common law sexual harassment tort; 2) whether the district court erred in several evidentiary rulings; 3) whether the district court erred in not including an "intervening cause" jury instruction; 4) whether there was cumulative error requiring reversal; 5) whether substantial evidence exists to support an intentional infliction of emotional distress claim and the award of punitive damages; 6) whether the district court erred in not remitting the damage award; and 7) whether the district court erred or abused its discretion in not awarding prejudgment interest on the punitive damages award. After careful review, we affirm the district court's rulings and judgment.

## I.

{2} This case stems from supervisor Toby Alire's (Alire) alleged sexual harassment of Coates and Duran while all three were employees at Sam's Club, a division of Wal–Mart. Coates and Duran claim that Alire physically and verbally sexually harassed them on several occasions between 1993 and 1994. Appellees further contend that Wal–Mart knew of this sexual harassment, yet failed to protect them or reprimand Alire.

{3} Between the spring of 1993 and 1994, Coates and Duran reported several incidents of sexual harassment to management. Several other women who claimed Alire had also sexually harassed them, or who had witnessed Alire harassing Coates and Duran, also reported several incidents to management.

{4} Sam's Club manager, Tom Romero, personally witnessed one incident of Alire's sexual harassment. Romero reported the incident, and several others that had been reported to him, to Alire's immediate supervisor. In turn, Alire's immediate supervisor reported the incidents to Sam's Club's assistant manager. Romero requested that the assistant manager give Alire a written reprimand. The assistant manager never reprimanded Alire.

{5} Besides Romero, an assistant manager and general manager also observed Alire's behavior. In August 1993, both the assistant manager and general manager watched and laughed as Alire made lewd and vulgar suggestions to Duran. Neither manager initiated disciplinary action against Alire.

{6} In December of 1993, Duran claimed that Alire approached her while she was on a forklift and grabbed her breasts from behind. Duran reported the incident to the assistant and general manager along with other ongoing harassment. Again, Wal–Mart did not investigate or reprimand Alire.

{7} A week after this incident, Wal–Mart informed Duran that it had decided to make Alire her supervisor. Duran claimed that Wal–Mart told her that the decision was final and that if she objected her only alternative was to quit. Duran quit her job near the end of December 1993. However, before she left, Duran again told the assistant manager of the many incidents of sexual harassment and assault that occurred since the spring of 1993. The assistant manager reported each incident to the general manager. Wal–Mart still did not take any action against Alire.

{8} After Duran quit, Coates and other female employees continued to complain about Alire's continued sexually harassing behavior. In February 1994, Coates and Kim Martinez (Martinez), another female employee, reported to the store's manager that Alire had allegedly pulled Martinez' blouse open to look at her breasts. Wal–Mart took no action either to investigate or to reprimand Alire regarding the incident. Incidents of sexual harassment continued into the Spring of 1994, and despite many complaints, Wal–Mart never disciplined Alire.

{9} In March 1994, a supervisor saw Alire make an obscene gesture to Coates and heard Coates scream. Wal–Mart again did

not respond to Alire's actions and permitted Alire to remain a supervisor.

{10} Later in March 1994, Wal–Mart held a management meeting and permitted Coates and·Martinez to describe the incidents of Alire's sexually harassing behavior. After the meeting, Wal–Mart transferred Alire to a different department. However, Alire still remained a supervisor and was not otherwise disciplined.

{11} Wal–Mart then transferred Alire to a department immediately adjacent to Coates' workstation. Coates still had contact with Alire and reported to management that his angry manner frightened her. Wal–Mart took no action in this regard and in May 1994, Coates quit.

{12} A month after Coates left Wal–Mart, the Rio Grande Sun published a newspaper article reporting Alire's arrest for the assault, kidnapping, and rape of his girlfriend. Wal–Mart's general manager read the article and reported it to national headquarters. Wal–Mart continued to employ Alire, even after his conviction. However, Wal–Mart did terminate Alire while in jail, after his continued absence violated Wal–Mart's leave policies.

{13} After leaving Wal–Mart's employment, Coates and Duran filed a claim against Wal–Mart alleging negligent supervision and intentional infliction of emotional distress. Coates and Duran also filed a claim against Alire individually.

{14} Before trial, Wal–Mart filed a motion for summary judgment claiming that the Workers' Compensation Act's (WCA) exclusivity provision barred Coates and Duran from raising a claim outside the WCA. The court denied the motion and the matter then proceeded to trial.

{15} Wal–Mart also filed a motion in limine to exclude the newspaper article and any other evidence regarding Alire's arrest. Wal–Mart argued that the acts for which Alire was arrested and convicted occurred after Coates and Duran left Wal–Mart. The court granted the motion. However, after Coates and Duran announced that they had settled with Alire, the court reversed its ruling on the motion in limine and allowed the facts of Alire's arrest into evidence.

{16} The court also admitted the testimony of an expert specializing in preventing and responding to workplace sexual harassment. Coates and Duran introduced the expert's testimony in response to Wal–Mart's claim that it had adopted model corporate policies concerning sexual harassment.

{17} The court, however, excluded evidence of Coates' ex-husband's incarceration and inability to provide child support. The court also excluded evidence of Duran's own incarceration and background. Wal–Mart claimed that such evidence would have contradicted the claim that Alire's actions caused them severe emotional distress. The court also excluded from evidence photographs of a forklift that would allegedly show the impossibility of Duran's claim that Alire had jumped on a forklift and performed lewd acts behind her, although the court allowed the photographs to be used for demonstrative purposes.

{18} Wal–Mart moved for a directed verdict at the close of Appellees' case and at the close of all evidence. The court denied both motions.

{19} The jury found in favor of Duran and Coates on both the negligent supervision and intentional infliction of emotional distress claims. The jury awarded Duran $84,000 in compensatory damages for the negligent supervision claim, $30,000 .in compensatory damages for the intentional infliction of emotional distress claim, and $1,200,000 in punitive damages. Coates received $48,000 in compensatory damages for the negligent supervision claim, $15,000 for the intentional infliction of emotional distress claim, and $555,000 in punitive damages. The court also awarded ten percent prejudgment interest on the compensatory damages but did not award prejudgment interest on the punitive damage awards.

{20} Wal–Mart filed a motion for judgment notwithstanding the verdict or, in the alternative, for remittitur. The district court subsequently denied this motion. Wal–Mart then appealed the verdict and judgment to the Court of Appeals. Coates and Duran, in

a cross-appeal, also appealed the denial of prejudgment interest on the punitive damage awards. The Court of Appeals then certified the matter to this Court for our review.

## II.

{21} The question whether the WCA covers an injury that occurred in the workplace is a question of law, which we review de novo. *See Cox v. Chino Mines/ Phelps Dodge*, 115 N.M. 335, 337, 850 P.2d 1038, 1040 (Ct.App.1993). We also review the court's ruling on a motion for summary judgment under a de novo standard of review, while determining whether any genuine issues of material fact exist and whether the movant was entitled to judgment as a matter of law. *See* Rule 1–056(C) NMRA 1999; *Gallegos v. State Bd. of Educ.*, 1997–NMCA–040 ¶ 12, 123 N.M. 362, 940 P.2d 468.

{22} The WCA was created to offset the lost wages of a worker injured by a work-related accident, while promoting a policy in which workers would not become dependant on state welfare programs. *See Casias v. Zia Co.*, 93 N.M. 78, 80, 596 P.2d 521, 523 (Ct.App.1979). The WCA was the result of a bargain struck between employers and employees. In return for the loss of a common law tort claim for accidents arising out of the scope of employment, the WCA ensures that workers are provided some compensation during recovery to keep their family off welfare. *See Aranda v. Mississippi Chem. Corp.*, 93 N.M. 412, 416, 600 P.2d 1202, 1206 (Ct.App.1979). Likewise, while the employer gives up any common law defenses, the WCA assures the employer limited and determinate liability. *See Sanchez v. Hill Lines, Inc.*, 123 F.Supp. 42, 43 (D.N.M.1954).

{23} Wal–Mart contends that Appellees are barred from raising a tort claim because the WCA provides the exclusive remedy for work-related injuries. Relying on NMSA 1978, § 52–1–9 (1973), otherwise known as the "exclusivity provision," Wal–Mart argues that the WCA provides employees with the exclusive remedy for *any* personal injury in the workplace in lieu of any other liability. We disagree.

{24} While it is true that the basic essence of the exclusivity provision is that the WCA's remedy is exclusive to all other remedies against the employer for the same injury, the exclusivity provision is not an absolute bar. "The exclusivity provided for by the New Mexico Workmen's Compensation Act is the product of a legislative balancing of the employer's assumption of liability without fault with the compensation benefits to the employee...." *Dickson v. Mountain States Mut. Cas. Co.*, 98 N.M. 479, 480, 650 P.2d 1, 2 (1982). However, the WCA will preclude other claims only if the injury falls within the scope of the WCA. *See Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 652, 905 P.2d 185, 192 (1995). The WCA only covers work-related accidents and only injuries that fall within the act's coverage. A claim falls outside the WCA for work-related injuries if: 1) the injuries do not arise out of employment, *see Cox*, 115 N.M. at 337–38, 850 P.2d at 1040–41; 2) substantial evidence exists that the employer intended to injure the employee, *see Johnson Controls World Servs., Inc. v. Barnes*, 115 N.M. 116, 118, 847 P.2d 761, 763 (Ct.App.1993); or 3) the injuries are not those compensable under the WCA, *see Sabella v. Manor Care, Inc.*, 121 N.M. 596, 599, 915 P.2d 901, 904 (1996). Although any one of the preceding exceptions removes the claim from the coverage of the WCA, all three exceptions exist here.

### A.

{25} Injuries caused by sexual harassment do not arise out of employment. *See Cox*, 115 N.M. at 338, 850 P.2d at 1041. Accordingly, Appellees' claims are not compensable under the WCA. In *Cox*, a claimant appealed a Workers' Compensation Administration decision which denied her compensation benefits and dismissed her claim with prejudice. The Court of Appeals considered whether the claimant had sustained an injury "arising out of" her employment as defined under the WCA as a result of incidents of sexual harassment. The claimant argued that her injuries arose out of the workplace and were thus compensable under WCA. She also contended that she should be compensated under the WCA as a matter of public policy. Point-

ing to the New Mexico Human Rights Act, NMSA 1978, §§ 28–1–1 to –7, 28–1–9 to – 14 (1969, as amended through 1991), and the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 (1988), as examples, she claimed that the law, as a matter of public policy, provides remedies for sexual harassment in the workplace. Thus, she argued, providing similar remedies under the WCA would be consistent with such public policy.

{26} The Court of Appeals held that although the claimant's injury may have been causally related to her employment, sexual harassment does not amount to an accident "arising out of her employment" under the WCA. *Cox,* 115 N.M. at 338, 850 P.2d at 1041. The Court of Appeals also noted that while the Human Rights Act and the Civil Rights Act of 1964 also provide remedies for sexual harassment, these acts address concerns that are quite different from those that the WCA addresses. *See id.* The Court of Appeals stated that "the way to maintain public policies against sexual harassment on the job is to pursue the common-law or statutory remedies available to promote these policies and not to engraft those policies onto a very different legislative scheme such as the Workers' Compensation Act." *Id.* at 338–39, 850 P.2d at 1041–42; *see also Byrd v. Richardson–Greenshields Sec., Inc.,* 552 So.2d 1099, 1104 n. 7 (Fla.1989) (stating that "as a matter of public policy, sexual harassment should and cannot be recognized as a 'risk' inherent in any work environment.").

{27} We agree with the Court of Appeals and hold that injuries caused by sexual harassment do not arise from employment and are thus not compensable under the WCA. The WCA only covers accidental injuries that occur in the workplace. *See Coleman,* 120 N.M. at 652–53, 905 P.2d at 192–93. This Court will not adopt a rationale that would categorize sexual harassment as an accident.

■ {28} Sexual harassment is not an "accident" that invokes WCA coverage. *See Ortiz v. Ortiz & Torres Dri–Wall Co.,* 83 N.M. 452, 453, 493 P.2d 418, 419 (Ct.App. 1972) (stating that " '[i]n the sense of the statute, 'accidental injury' or 'accident' is an unlooked for mishap, or untoward event which is not expected or designed.' ") (quot-

ing *Lyon v. Catron County Comm'rs,* 81 N.M. 120, 125, 464 P.2d 410, 415 (Ct.App. 1969)). Sexual harassment is not an accident but rather is a form of discrimination, which as matter of public policy is not accepted in society. Employers must be responsible for maintaining a workplace free from sexual harassment. *See Sabella,* 121 N.M. at 601, 915 P.2d at 906 (holding that "under the alleged facts of [that] case, a claim of [sexual harassment] under the [Human Rights Act] is not barred by the WCA."). Allowing a worker subjected to sexual harassment to seek civil damages "not only vindicates the state's interest in enforcing public policy but also adequately redresses the harm to the individual naturally flowing from the violation of public policy." *Michaels v. Anglo Am. Auto Auctions, Inc.,* 117 N.M. 91, 93, 869 P.2d 279, 281 (1994). Therefore, we hold that the WCA's exclusivity provision does not preclude an employee from seeking a remedy outside the WCA for injuries caused by sexual harassment.

### B.

■ {29} The exclusivity provision also does not bar Appellees' claims because sufficient evidence exists to show that Wal–Mart acted intentionally. *See Beavers v. Johnson Controls World Servs., Inc.,* 120 N.M. 343, 347, 901 P.2d 761, 765 (Ct.App.1995) (citing *Barnes,* 115 N.M. at 118, 847 P.2d at 763). If an employer intended to injure an employee, the employer may be subject to a common-law tort action outside the exclusivity provision of the WCA. *See Gallegos v. Chastain,* 95 N.M. 551, 553–54, 624 P.2d 60, 62–63 (Ct.App.1981).

{30} In *Beavers,* an employee testified, among other things, that her supervisor belittled and denigrated her in front of coworkers and that his conduct resulted in her becoming extremely depressed, suffering acute mental distress necessitating hospitalization. The employee also presented evidence that despite her supervisor's knowledge of her work-related stress and hospitalization, the supervisor continued to ridicule and disparage her in front of other company employees. The company asserted that the employee's claim for mental dis-

tress was barred by the exclusivity provision. The Court of Appeals held that the employee had both alleged and presented sufficient evidence in her complaint that her supervisor acted intentionally. *See Beavers,* 120 N.M. at 348, 901 P.2d at 766. The court also concluded that the exclusivity provision did not bar her cause of action outside the WCA. *See id.*

{31} In this case, like *Beavers,* the Appellees have alleged and presented sufficient evidence at trial that Wal–Mart's supervisors acted intentionally. Appellees presented evidence that despite Wal–Mart's knowledge of Alire's conduct, it failed to take any actions to protect Appellees or discipline Alire. Appellees complained to several managers about Alire's conduct on several different occasions. Two managers personally observed Alire's conduct, yet took no action to either protect Appellees, or to discipline Alire. Under these circumstances, we conclude that sufficient evidence exists for a jury to conclude that Wal–Mart's actions were intentional and thus, the exclusivity provision does not bar Appellees' claims.

### C.

{32} The exclusivity provision also does not prohibit Appellees from raising a claim outside the WCA because their injuries are not those compensable under the WCA. "When an injury does not fall within the coverage formula of the WCA, the exclusivity provisions of the WCA do not preclude recovery other than [that provided] under the WCA." *Sabella,* 121 N.M. at 599, 915 P.2d at 904. Psychological injuries are not compensable under the WCA if they are not "primary mental impairment" or "secondary mental impairment" as set forth in the WCA. Primary mental impairment is limited "to sudden, emotion-provoking events of a catastrophic nature ... as opposed to gradual, progressive stress-producing causes such as ... harassment ... over [a] period of time." *Jensen v. New Mexico State Police,* 109 N.M. 626, 629, 788 P.2d 382, 385 (Ct.App.1990); *see also* § 52–1–24(B) (defining "primary mental impairment"). Secondary mental impairment results from a physical impairment caused by an accidental injury. *See* NMSA

1978, § 52–1–24(C) (defining "secondary mental impairment").

{33} Here, Duran testified that she experienced severe emotional distress because of Alire's actions and Wal–Mart's failure to respond to her complaints. She testified that she gained excessive weight and could not leave her house for three months because she was humiliated, embarrassed, afraid, and claustrophobic. Duran testified that she experienced these feelings from the time of the sexual harassment up until the trial. Coates testified that she too suffered from severe emotional distress, insomnia, and fear. Coates also claims that her fear was more intense after Alire was arrested.

{34} Psychological injuries occurring over a period of time, as happened here, are not compensable under the WCA. *See Jensen,* 109 N.M. at 629, 788 P.2d at 385. Appellees' alleged injuries started from the time of the sexual harassment, which occurred for over a year, up to the time of trial. Appellees' alleged injuries were the result of neither a sudden event nor an accidental injury, and thus were neither primary nor secondary injuries under the WCA. Since Appellees' psychological injuries do not fall within the WCA's coverage, they are not compensable under the WCA and thus, the exclusivity provision does not bar Appellees' claim. *See Beavers,* 120 N.M. at 347, 901 P.2d at 765.

### D.

{35} In short, the WCA exclusivity provision does not bar Appellees' tort claims because injuries caused by sexual harassment do not arise out of employment. Also, the exclusivity provision does not bar Appellees' tort claims because substantial evidence exists from which a jury could conclude that Wal–Mart's actions were intentional. Finally, the exclusivity provision does not bar Appellees' tort claims because Appellees' prolonged psychological injuries do not fall within the WCA's coverage. Thus, for all of the foregoing reasons, the exclusivity provision does not bar Appellees' claims.

## III.

{36} Next, we address whether the trial court's exclusion of certain evidence was prejudicial error or an abuse of discretion. "Admission or exclusion of evidence is a matter within the discretion of the trial court and the court's determination will not be disturbed on appeal in the absence of a clear abuse of that discretion." *State v. Valdez,* 83 N.M. 632, 637, 495 P.2d 1079, 1084 (Ct.App.), *aff'd* 83 N.M. 720, 497 P.2d 231 (1972). " 'An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case.' " *State v. Apodaca,* 118 N.M. 762, 770, 887 P.2d 756, 764 (1994) (quoting *State v. Simonson,* 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983)). A trial court abuses its discretion by its ruling only if " 'we can characterize it as clearly untenable or not justified by reason.' " *Id.* (quoting *State v. Litteral,* 110 N.M. 138, 141, 793 P.2d 268, 271 (1990)).

{37} Evidence is relevant if it tends to make a fact in issue more or less probable and any doubt should be resolved in favor of admissibility. *See* Rule 11–401 NMRA 1999. All relevant evidence is generally admissible. *See* Rule 11–402 NMRA 1999. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Rule 11–403 NMRA 1999. "[T]he complaining party on appeal must show the erroneous admission and exclusion of evidence was prejudicial in order to obtain a reversal." *Cumming v. Nielson's, Inc.,* 108 N.M. 198, 203–04, 769 P.2d 732, 737–38 (Ct. App.1988).

### A.

{38} Wal–Mart contends that evidence of Alire's conviction was irrelevant, prejudicial and thus inadmissible. We disagree. The evidence of Alire's conviction on sexual assault charges is relevant to Wal–Mart's reaction to and knowledge of Alire's conduct. This reaction and knowledge are relevant to rebut Wal–Mart's claim that it had in place a policy that was effective in protecting its employees from sexual harassment *after* it had notice of an employee's

misconduct. *Cf. Gomez v. Martin Marietta,* 50 F.3d 1511, 1518 (10th Cir.1995) ("[An employer's] treatment of other arguably similar misconduct is clearly probative of whether its treatment of [an employee] breached its obligation to discipline its employees consistently.") This is especially relevant since Wal–Mart continued to employ Alire after he was convicted of kidnapping and rape. Moreover, Wal–Mart has not offered any proof that the admission of the evidence unfairly prejudiced it, especially since Wal–Mart itself opened the door to the evidence's use by raising the defense that it had policies in place to prevent sexual harassment. *Cf. State v. Gonzales,* 113 N.M. 221, 228, 824 P.2d 1023, 1030 (1992) (upholding the admission of certain impeachment evidence, because among other things, the complaining party had "opened the door" for the evidence). Given testimony that Wal–Mart continually failed to protect Coates and Duran and discipline Alire, at worst, the evidence was merely cumulative. *See id.* at 229, 824 P.2d at 1031 (holding that the trial court did not err in admitting evidence, because among other things, the evidence was cumulative (citing to *State v. Moore,* 94 N.M. 503, 505, 612 P.2d 1314, 1316 (1980))). Under these circumstances, we conclude that the evidence regarding Alire's conviction was highly relevant and well within the court's discretion to allow its admission.

### B.

{39} Wal–Mart challenges the admission of the expert testimony on the ground that "such testimony did not assist the trier of fact in understanding the evidence or in determining an issue of fact." We disagree. "The admission of expert testimony ... is within the sound discretion of the trial court and will not be reversed absent a showing of the abuse of that discretion." *State v. Gilbert,* 100 N.M. 392, 400, 671 P.2d 640, 648 (1983); *accord Fuyat v. Los Alamos Nat'l Lab.,* 112 N.M. 102, 106, 811 P.2d 1313, 1317 (Ct.App.1991). "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may

testify thereto in the form of an opinion or otherwise." Rule 11–702 NMRA 1999. This case involves sexual harassment, and the expert testified regarding the minimum standards for an effective sexual harassment corporate policy. She also testified as to how an employer should enforce its sexual harassment policy in a manner likely to protect employees. Wal–Mart, as a defense, had claimed that it had a good sexual harassment policy. The expert's testimony was relevant to refute Wal–Mart's defense and assist the jury in understanding the issue. Under these circumstances, we conclude that the testimony assisted the jury in understanding the evidence and in determining a factual issue of consequence to the case.

### C.

{40} Wal–Mart argues that the court erred in excluding evidence of Coates' ex-husband's murder conviction, his incarceration, and his failure to support their children, as well as evidence of Duran's own incarceration. Wal–Mart alleges that the evidence is relevant to the cause of Appellees' emotional distress. We hold that the court properly excluded the evidence.

{41} As for the exclusion of the evidence regarding Coates' ex-husband, we note that he had been in jail almost ten years before the alleged emotional distress occurred. Nevertheless, his incarceration and failure to support their children do have some probative value as to the stress Coates was suffering. At trial, the defendant proffered the evidence of Coates' ex-husband's conviction, incarceration, and failure to pay child support to show the cause of Coates' stress. Because the cause of Coates' stress was, without a doubt, a fact that was of consequence to the case, the evidence would not appear to be inadmissible on Rule 11–401 or Rule 11–402 grounds.

{42} Nevertheless, we conclude that the evidence was properly excluded under Rule 11–403. As the trial court held, "there is some very limited probative value to the evidence . . . . but I think that what little probative value there is to that evidence, it is substantially outweighed by the danger of unfair prejudice. Therefore, pursuant to Rule [11–]403, [we] exclude the evidence." Rule 11–403 stipulates: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." As noted, the trial court concluded that the proffered evidence had little probative value. Given the length of time between the ex-husband's incarceration and Coates' distress, we do not find this conclusion to be illogical or contrary to the facts and circumstances of the case. We also note that, although the court did not admit specific evidence of her ex-husband's conviction, it did permit Wal–Mart to ask Coates about her marriage and divorce. For all these reasons, we conclude that the trial court acted within its discretion in excluding the evidence of the ex-husband's conviction, incarceration, and failure to pay child support.

{43} As for the trial court's exclusion of direct evidence regarding Duran's driving while under the influence conviction, we conclude, for reasons similar to those listed above, that the trial court properly acted within its discretion in disallowing this proffered evidence. Cf. Rule 11–609 NMRA 1999 (allowing for evidence of crimes not involving dishonesty or false statements, only if, among other things, "the probative value of admitting this evidence outweighs its prejudicial effect"). Moreover, although the court forbade Wal–Mart from presenting direct evidence of the conviction, it did allow Wal–Mart to present evidence to the jury that indirectly tended to show that Duran had been arrested, incarcerated, and otherwise punished for her alleged misconduct. Moreover, Duran freely testified to the matter. Under these circumstances, we conclude that, even if the trial court erroneously excluded the evidence, the error was harmless.

### D.

{44} Finally, Wal–Mart argues that the court improperly excluded as evidence photographs of a forklift that would allegedly show the impossibility of an incident in which Duran claimed that Alire jumped on a forklift to perform lewd acts from behind her. We disagree. The court

properly excluded the photographs of the forklift as untimely and because Wal–Mart failed to comply with the pretrial order. Wal–Mart never identified the exhibit for the Appellees and the court, as the court's pretrial order required. Wal–Mart produced the photographs only when it attempted to introduce them into evidence on the last day of trial. Thus, the court properly excluded the photographs as a sanction. Moreover, since the court still allowed Wal–Mart's witness to draw diagrams of the forklift and to testify that it was impossible for a second person to get up on the forklift and perform lewd acts from behind another person on the forklift, Wal–Mart was not prejudiced by the exclusion of the photographs.

## IV.

{45} We next address whether the district court erred in refusing to include an independent intervening cause instruction. We hold that the court did not err. An intervening cause instruction is necessary when the evidence shows that something "interrupt[ed] and turn[ed] aside a course of events and produc[ed] that which is not foreseeable." UJI 13–306 NMRA 1999. No evidence exists that any other cause other than Wal–Mart's and Alire's acts and omissions caused harm to Appellees. Thus, the district court correctly held that an intervening cause instruction was not warranted. Moreover, Wal–Mart was not harmed by not having an intervening cause instruction because the court still allowed the jury to consider other factors that Wal–Mart alleged had caused stress in Appellees' lives.

## V.

{46} Next, we consider whether substantial evidence supports the jury's verdict in favor of the Appellees for intentional infliction of severe emotional distress, as well as for future and punitive damages. We hold that it does. In considering a substantial evidence claim, "we resolve all disputed facts in favor of the successful party, indulge all reasonable inferences in support of a verdict, and disregard all evidence and inferences to the contrary." *Clovis Nat'l Bank v. Har-*

*mon,* 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984).

{47} To recover for intentional infliction of emotional distress, the claimant must show that the tortfeasor's conduct was extreme and outrageous under the circumstances, that the tortfeasor acted intentionally or recklessly, and that as a result of the conduct the claimant experienced severe emotional distress. *See* UJI 13–1628 NMRA 1999. Punitive damages are warranted if the misconduct was malicious, willful, reckless, wanton, fraudulent, or in bad faith. *See* UJI 13–1827 NMRA 1999.

{48} Substantial evidence exists in the record to support the jury's decision that Wal–Mart intentionally inflicted severe emotional distress on the Appellees and that Wal–Mart's misconduct merits an award of punitive damages. Although Wal–Mart argues that it should not be responsible for the actions of one employee, Alire, "the actions of the employees [should be viewed] in the aggregate to determine whether [the employer] had the requisite culpable mental state because of the cumulative conduct of the employees." *Clay v. Ferrellgas, Inc.,* 118 N.M. 266, 270, 881 P.2d 11, 15 (1994). In this case, it was not only Alire's conduct but also the conduct of several of Wal–Mart's managers which caused the Appellees' emotional distress. Moreover, although the other managers' acts and omissions each alone may be insufficient proof of intent, when viewed cumulatively, they may establish a clear and convincing inference of actual malice. *See id.* (citing to *Herron v. Tribune Publ'g. Co.,* 108 Wash.2d 162, 736 P.2d 249, 256 (1987) (en banc)). Alire's conduct was outrageous, and apparently Wal–Mart was aware of this since Alire's conduct was witnessed by high level supervisory personnel. Under these circumstances, a reasonable fact-finder could conclude that Wal–Mart intentionally allowed the harassment to continue with " "utter indifference to the consequences." " *Gonzales v. Surgidev Corp.,* 120 N.M. 133, 145, 899 P.2d 576, 588 (1995) (quoting *Ferrellgas,* 118 N.M. at 270, 881 P.2d at 15 (quoting UJI 13–1827 SCRA 1986)). Thus, we hold that sufficient evidence exists to support the jury's verdict of intentional infliction of emotional

distress and to warrant punitive future damage awards.

## VI.

{49} Next, we address the issue whether the court erred in refusing to remit the damage awards. Wal–Mart contends that the award was manifestly excessive. "In determining whether a jury verdict is excessive, the court does not weigh the evidence but determines the excessiveness as a matter of law." *Chavez–Rey v. Miller*, 99 N.M. 377, 379, 658 P.2d 452, 454 (Ct.App.1982). The trial court, unlike the appellate court that views the record cold, is in the unique position to observe the witnesses and their demeanor as well as the jurors' attitude during the trial. *See Grammer v. Kohlhaas Tank & Equip. Co.*, 93 N.M. 685, 695, 604 P.2d 823, 833 (Ct.App.1979). "The amount of awards necessarily rests with the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is just compensation, and, in the final analysis, each case must be decided on its own facts and circumstances." *Powers v. Campbell*, 79 N.M. 302, 304, 442 P.2d 792, 794 (1968). After careful review, we hold that the trial court did not err in refusing to remit the compensatory damage awards.

{50} In *Allsup's Convenience Stores v. North River Ins. Co.*, 1999–NMSC–006, 127 N.M. 1, 976 P.2d 1, we provided an analytical framework for determining whether a trial court erred in granting a motion for remittitur.

> The trial judge ... has *limited* superintendence when ordering a remittitur in that the exercise of such discretion must be supported by express reasons, *see [Rety v. Green*, 546 So.2d 410, 418 (Fla.Dist.Ct. App.1989) ], and those reasons must establish the presence of "passion, prejudice, sympathy, partiality, undue influence, or some corrupt cause or motive." *See [Richardson v. Rutherford*, 109 N.M. 495, 503, 787 P.2d 414, 422 (1990). ...] In the present scenario, the appellant attacks the reasons for remittitur given by the trial judge by demonstrating that the record supports the contention that there was no error in the verdict. The burden then shifts to the appellee to show there was error to support the judge's reasoning.

*Id.* ¶ 19. Although the facts in *Allsup's* are distinguishable from those before us now, we conclude that the analytical framework in *Allsup's* controls the case at bar.

{51} *Allsup's* involved the review of a *grant* of a motion for remittitur. Here, by contrast, we are reviewing the denial of such a motion. Nonetheless, the burden-of-proof principles set forth in *Allsup's* guide us in our disposition of the case before us. Specifically, we conclude that because Wal–Mart is appealing a denial of a remittitur, it bears the burden of showing that the record supports its contention that there was error in the verdict. Put another way, Wal–Mart must show that the verdict (i.e., damage awards) was infected with "passion, prejudice, partiality, sympathy, undue influence, or some corrupt cause or motive." *Id.*

{52} At trial, the Appellees presented evidence of compensatory damages using an economic expert along with their own testimony. Wal–Mart did not dispute the damage figures. The jury accordingly allocated different damage amounts to each Appellee. Wal–Mart has not shown anything in the record to prove that the compensatory damage awards were excessive. Nor has it shown that the jury was inflamed with some sort of improper prejudice against it. For this reason, Wal–Mart has not borne its burden of proving error. Accordingly, we affirm the trial court's refusal to remit the compensatory damage awards.

{53} Likewise, we hold that the court did not abuse its discretion by refusing to remit the punitive damages. "The amount of [the] award of punitive damages [was not] so unrelated to the injury and actual damages proven as to plainly manifest passion and prejudice rather than reason or justice." *Chavez–Rey*, 99 N.M. at 379, 658 P.2d at 454. As we stated earlier, Alire's conduct was outrageous, and apparently Wal–Mart was aware of this, since Alire's conduct was witnessed by high-level supervisory personnel. Moreover, as before, Wal–Mart has not shown that the jury was inflamed with some sort of improper prejudice in rendering the

punitive damage awards. For this reason, Wal–Mart failed to carry its burden of proof on appeal. Accordingly, we affirm the trial court's refusal to remit the punitive damage awards.

## VII.

{54} Next, we consider whether the court erred in not awarding prejudgment interest on the punitive damage award. Coates and Duran argue that the court erred in ruling that prejudgment interest could not be applied to punitive damages. We disagree.

■ {55} The trial court has the discretion to award prejudgment interest. *See* NMSA 1978, § 56–8–4(B) (1851–1852); *Navajo Tribe v. Bank of New Mexico,* 700 F.2d 1285, 1290 (10th Cir.1983) ("This court is ... convinced ... that were the New Mexico Supreme Court · to pass on [the] issue it would hold that award of prejudgment interest is a question of law solely within the sound discretion of the court."). " 'Awarding prejudgment interest on compensatory damages ... ensures that just compensation to the tort victim is not eroded by the dilatory tactics of the tortfeasor....' " *Calleon v. Miyagi,* 76 Hawai'i 310, 876 P.2d 1278, 1290 (1994) (quoting *Digital & Analog Design Corp. v. North Supply Co.,* 63 Ohio St.3d 657, 590 N.E.2d 737, 741 (1992)). Prejudgment interest serves two purposes, promoting early settlements and compensating persons; however, it was never intended to encompass an award of punitives. *See Murphy v. United Steelworkers of Am. Local No. 5705,* 507 A.2d 1342, 1346 (R.I.1986); *see also Ramada Inns, Inc., v. Sharp,* 101 Nev. 824, 711 P.2d 1, 2 (1985) (per curiam) ("Because the amount of punitive damages to be awarded is not known until the judgment is rendered, we hold that prejudgment interest may not be granted by a trial court on punitive damage awards."). "Interest is awarded to make the tort victim whole, and has no bearing on the question of punishing the tortfeasor and comprises a sanction wholly separate from any punitive damages awarded." *d'Arc Turcotte v. Estate of LaRose,* 153 Vt. 196, 569 A.2d 1086, 1088 (1989).

■ {56} Because a tort victim can be made whole even if prejudgment interest is not awarded on punitive damages, we find that the district court did not abuse its discretion in not awarding prejudgment interest on the punitive damage award. *See· Ellis County State Bank v. Keever,* 888 S.W.2d 790, 796 (Tex.1994) (stating that "[p]unitive damages, being inherently penal in character, should not be enlarged by the imposition of prejudgment interest in the absence of an express legislative intent to do so"). Apart from those states whose cases have already been cited in this opinion, many other states have held that awarding prejudgment interest on a punitive damages award is inappropriate. *See, e.g., Matanuska Elec. Ass'n, Inc. v. Weissler,* 723 P.2d 600, 610 (Alaska 1986); *Wheeler Motor Co. v. Roth,* 315 Ark. 318, 867 S.W.2d 446, 451–52 (1993); *Lakin v. Watkins Associated Indus.,* 6 Cal.4th 644, 25 Cal.Rptr.2d 109, 863 P.2d 179, 190–92 (1993); *Ballow v. PHICO Ins. Co.,* 878 P.2d 672, 683 (Colo.1994) (en banc); *Peterson v. First Nat'l Bank,* 423 N.W.2d 889, 890 (Iowa Ct.App. 1988); *Jordan v. Intercontinental Bulktank Corp.,* 621 So.2d 1141, 1158 (La.Ct.App.1993); *Dees v. American Nat'l. Fire Ins. Co.,* 260 Mont. 431, 861 P.2d 141, 150–51 (1993); *Poling v. Wisconsin Physicians Service,* 120 Wis.2d 603, 357 N.W.2d 293, 298 (Wis.Ct. App.1984) (stating "[t]he [plaintiffs] concede that the award of prejudgment interest on the bad faith and punitive awards is inappropriate.").

## VIII.

■ {57} Finally, we address whether there was cumulative error. Reversal may be required when the cumulative impact of errors during a trial is so prejudicial that a party was denied a fair trial. *See State v. Jett,* 111 N.M. 309, 315, 805 P.2d 78, 84 (1991). However, since no prejudicial errors or irregularities exist in the points raised on appeal, no errors exist to cumulate in denial of a fair trial. *See id.* (citing *State v. Stephens,* 99 N.M. 32, 38, 653 P.2d 863, 869 (1982)).

## IX.

{58} Based on the forgoing discussion, we affirm the district court's judgment and

denial of prejudgment interest on the punitive damage awards.

{59} **IT IS SO ORDERED.**

MINZNER, C.J., SERNA and MAES, JJ., concur.

GENE E. FRANCHINI, Justice
(Concurring in part, dissenting in part).

FRANCHINI, Justice (Concurring in part, dissenting in part).

{60} I agree with the majority that the exclusivity provisions of the Workers' Compensation Act (WCA) do not apply to this case. However, I dissent from the result reached by the majority for three reasons. First, I think the trial court erred in admitting the extremely prejudicial evidence of Alire's arrest and conviction. Second, in my view, Wal–Mart was entitled to present to the jury fully and fairly its theory that the degree of emotional distress suffered by the Plaintiffs' had other causes than those alleged by the Plaintiffs. Third, I do not believe substantial evidence supports the verdict on intentional infliction of emotional distress or the award of punitive damages.

{61} The Plaintiffs do not deny that when the two-page newspaper article detailing Alire's arrest for the May 25, 1994 beating of his girlfriend was read to the jury pool, there was an audible gasp from the prospective jurors. A brief excerpt of the article reads:

> It was obvious ... that the victim had been beaten as her left eye had a severe hemotoma [sic] covering the area around it. In addition, it was reported that the victim had serious bruising over her body including her chest, arms, shoulders and face. In addition, [police] ... noticed bruising consistent with a person being choked on both sides of her neck.

The article goes on to describe how the victim, in her interview with police, "appeared visibly shaken and shocky [sic], her mannerism was that of a person who had been severely beaten." The article further pointedly noted that before Alire allegedly raped the victim on the morning after he beat her, he "allegedly called his employer, Sam's Club

[a division of Wal–Mart] in Santa Fe, and told them he would not be at work that day." Additionally, according to the article, "Alire was charged with false imprisonment and assault and battery in August 1993, but the district attorney's office said those charges apparently were dropped because of insufficient evidence." Upon hearing the gasp from the jury, counsel for Wal–Mart asked that the venire be stricken and a mistrial granted, but the trial court denied the request.

{62} Rule 11–401 NMRA 1999 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 11–402 NMRA 1999 states: "All relevant evidence is admissible, except as otherwise provided by ... these rules or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible." Rule 11–403 NMRA 1999 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."

{63} The majority opinion sees relevance in the above newspaper article and the fact of Alire's subsequent conviction for false imprisonment and aggravated battery in that they somehow "rebut Wal–Mart's claim that it had in place a policy that was effective in protecting its employees from sexual harassment *after* it had notice of an employee's misconduct." Apparently the majority is disturbed that Wal–Mart did not fire Alire upon publication of the newspaper article, even though the article itself notes that similar charges had been made and dropped against Alire in the past. For my part, I simply do not understand the majority's "notice and protection" rationale since there is no evidence that there were any complaints by Wal–Mart employees that they needed protection from Alire after publication of the newspaper article. Indeed, Alire was jailed the week *before* the newspaper article was published and it appears from the article that he remained there, unable to make bond. Additionally, I note that Wal–Mart's sexual harassment policy as applied to its employees generally was

not on trial in this case—else this suit would have been brought under the New Mexico Human Rights Act or Title VII of the federal Civil Rights Act. Rather, two individual plaintiffs sued Wal–Mart for tort damages done to them particularly. Those plaintiffs, Coates and Duran, had already left employment with Wal–Mart months *before* publication of the newspaper article, so I fail to see how the article or evidence of Alire's later conviction was relevant to Coates and Duran's case for damages against Wal–Mart.

{64} It is easy to see how the common perception might be that if Alire was the kind of person who would commit such abominable acts against his girlfriend as were detailed in the newspaper article, he probably did whatever Coates and Duran said he did to them at Wal–Mart. In a court of law, however, evidence offered to show that a defendant must have done a particular act on a particular occasion because it conforms to his alleged character is highly suspect and generally inadmissible. *See* Rule 11–404(A) NMRA 1999; *see also Baum v. Orosco*, 106 N.M. 265, 267, 742 P.2d 1, 3 (Ct.App.1987) (admissibility of character evidence in a civil case is even narrower than in a criminal case). Similarly, however influential on popular opinion, evidence of other wrongful behavior is generally considered non-probative and irrelevant in a court of law, at least in New Mexico. *Compare* Rule 11–404(B) NMRA 1999 (exceptions listed for admission of evidence of other wrongful behavior do not include Plaintiffs' implied theory that Alire acted in conformity with his alleged propensity for bad acts) *with* Fed.R.Evid. 415 (allowing admission of evidence regarding "Similar Acts in Civil Cases Concerning Sexual Assault"). Perhaps these are the reasons the trial court initially granted Wal–Mart's motion in limine to exclude the newspaper article and evidence of Alire's conviction. Inexplicably, the trial court later reversed itself—even going so far as to allow a poster-sized blow-up of the newspaper article to be presented to the jury—and I believe it did so in error.

{65} In my view, the newspaper article and evidence of Alire's conviction had no probative value or relevance to the case brought to trial by Coates and Duran. Its singular effect was to inflame the jury against Alire—and Wal–Mart by association since two were joined together as Defendants in Plaintiffs' Complaint. When Coates and Duran settled their claims against Alire for $100 apiece on the day the petit jury was impaneled, dismissing him from the suit, the jury could not hold him responsible for his conduct. Instead, the jury could only express its disgust by punishing Wal–Mart. Thus, in light of the gasp of horror from the venire in response to the newspaper article regarding Alire's arrest, I cannot agree with the majority's conclusion that "Wal–Mart has not offered any proof that the admission of the evidence unfairly prejudiced it." Moreover, because Plaintiffs asked for punitive damages in their Complaint and because I think it is likely that the facts surrounding Alire's arrest and conviction played a role in the jury's assessment of such damages, I cannot agree with the majority's conclusion that, "at worst, the evidence was merely cumulative." I would hold that the evidence of Alire's arrest and conviction should have been excluded.

{66} The second reason I dissent from the majority opinion is that I believe Wal–Mart should have been allowed to present fully to the jury its theory and evidence regarding possible contributing causes of the Plaintiffs' emotional distress. Wal–Mart's evidence had to do not just with the fact that Coates' ex-husband was incarcerated for murder and could not pay child support, but also with the fact that Duran had her driver's license suspended for 100 years and had spent 29 days in jail for driving under the influence and disorderly conduct during the period she claimed to be suffering from emotional distress as a result of Alire's actions. To my mind (and perhaps the jury's), these facts might very well have had an on-going, detrimental impact on the emotional health of the Plaintiffs, as the majority concedes in Paragraph 41 with regard to "the stress Coates was suffering."

{67} The majority justifies exclusion of this concededly relevant evidence by repeating the trial court's opinion that the probative value of such evidence against the Plaintiffs "is substantially outweighed by the

danger of unfair prejudice." However, neither the trial court nor the majority specifies the prejudicial aspect of such evidence. Surely the evidence could not have been more prejudicial than the newspaper article about Alire admitted against Wal–Mart? In any event, the prejudicial nature of potentially excludable evidence is not measured by the degree that it inflames the jury against a party, but insofar as it unfairly does so or confuses the issues in a case or misleads the jury. *See* Rule 11–403.

{68} I note that if Wal–Mart had been allowed to present its evidence against Coates and Duran on the causation issue directly and forcefully instead of indirectly and weakly, the jury might well have viewed Wal–Mart's theory as an appalling, added indignity perpetrated on Alire's victims. In my view, Wal–Mart had the right to run that risk without interference from the trial court, with the possibility that the jury would be persuaded that the Plaintiffs' causation theory was oversimplified and inaccurate. For this reason, even on the limited, indirect evidence that was admitted, I think Wal–Mart was entitled to an instruction presenting its theory of intervening causation to the jury. *Cf. Poore v. State,* 94 N.M. 172, 174–75, 608 P.2d 148, 150–51 (1980) (reversing trial court's refusal to give a criminal defendant's requested intervening cause instruction and holding that a defendant "should be accorded some semblance of liberality in having the jury instructed with particularity as to his defenses that are supported by the evidence").

{69} The third reason I dissent from the majority opinion is that I am not persuaded by Section V of the opinion that substantial evidence supports the jury's verdict on intentional infliction of emotional distress or the award of punitive damages against Wal–Mart. On the IIED award, the only intentional acts alleged are those of Alire, but there is no suggestion that Wal–Mart " 'commanded or expressly authorized' " those acts, so Wal–Mart cannot be held liable on that basis. *Gallegos v. Chastain,* 95 N.M. 551, 554, 624 P.2d 60, 63 (Ct.App.1981) (holding that battery of co-worker by another employee was not the intentional tort of the employ-

er) (quoted authority omitted). Moreover, I do not think this Court can simply impute Alire's acts to Wal–Mart without discussion beyond the statement in Paragraph 48 that "apparently Wal–Mart was aware" of Alire's conduct. *See Martin–Martinez v. 6001, Inc.,* 1998–NMCA–179, ¶¶ 13–20, 126 N.M. 319, 968 P.2d 1182 (refusing to impute manager's abusive actions towards employee to employer on alter ego or managerial capacity theories), *cert. denied,* No. 25,455, 126 N.M. 532, 972 P.2d 351 (Nov. 30, 1998). For this reason, in addition to disagreeing with Section V, I also disagree with Section II(B) of the majority opinion. *Cf. id.* at ¶¶ 9–12 (rejecting contention that *Beavers v. Johnson Controls World Serv., Inc.,* 120 N.M. 343, 901 P.2d 761 (Ct.App.1995), relied on in Section II(B), was decided on imputation of employee's intentional acts to employer).

{70} On the punitive damages award, I do not believe a showing was made in this case that the failings of high level supervisory personnel in dealing with Alire were "*maliciously* intentional." *See, e.g., Green Tree Acceptance, Inc. v. Layton,* 108 N.M. 171, 174, 769 P.2d 84, 87 (1989) (noting that intentional conduct is only properly the subject of an award of punitive damages "when the wrongdoer's conduct may be said to be 'maliciously intentional' ") (quoted authorities omitted). The majority opinion cites a libel case, *Herron v. Tribune Publishing Co.,* 108 Wash.2d 162, 736 P.2d 249, 256 (Wash.1987) (en banc), cited in a *Cf.* string citation by this Court in *Clay v. Ferrellgas, Inc.,* 118 N.M. 266, 270, 881 P.2d 11, 15 (1994), for the proposition that the other managers' omissions may establish an inference of "actual malice." "Actual malice" in a libel case, however, is a specialized term of art that until now has not been properly applicable in a punitive damages case not involving libel. Without discussion, the majority opinion makes it proper in New Mexico in this non-libel case and into the future.

{71} Lastly, while I agree with the majority's holding that the trial court properly refused to impose prejudgment interest on the punitive damages awarded to the Plaintiffs, it should be clear from the above discussion that I do not believe the issue should

have been reached. Wal–Mart, like any party, deserved a fair trial before a jury fully presented with proper evidence and instructions, not an unfair trial on evidence improperly admitted. I would have ordered reversal and remand to ensure such a trial in this case. The majority holding otherwise, I respectfully dissent.